HAIGHT, Senior District Judge:
 

 Debtor-Appellant Robert E. Casse appeals from an order of the United States District Court for the Eastern District of New York (Carol Bagley Amon, Judge) entered August 31, 1998, affirming an order of the bankruptcy court (Jerome Feller,
 
 Bankruptcy Judge)
 
 dated April 21, 1998 and denying debtor-appellant’s motion for a stay. The bankruptcy court’s order denied debtor-appellant’s motion to vacate a foreclosure sale of the home belonging to him and his wife, Carol J. Casse, dismissed the Chapter 13 case upon which appellant’s motion was based, and reserved decision on the Chapter 13 Trustee’s motion to sanction debtor-appellant’s counsel.
 
 See In re Casse,
 
 219 B.R. 657 (Bankr.E.D.N.Y.1998).
 

 By order entered October 20, 1998, the district court stayed further proceedings under a warrant of eviction from the home pending this Court’s resolution of the instant appeal.
 

 The bankruptcy court held, and the district court agreed, that the Casses’ prior bankruptcy filings, culminating in the bankruptcy court’s order dated July 16, 1997 dismissing their then pending Chapter 11 case “with prejudice,” barred the subsequent filing by debtor-appellant of the Chapter 13 case upon which he based his motion to vacate the foreclosure of the home. Accordingly the bankruptcy court dismissed that Chapter 13 case as void
 
 ab initio,
 
 thereby erasing the automatic stay upon which debtor-appellant relied to vacate the foreclosure.
 

 Because we conclude that the Bankruptcy Code authorized the order of the bank-' ruptcy court appealed from and that court did not abuse its discretion in entering it, we affirm.
 

 I.
 
 BACKGROUND
 

 In September 1988, appellant Robert E. Casse and his wife Carol J. Casse (collectively “the Casses”) obtained a mortgage loan of approximately $170,000 to purchase a home at 64-24 Austin Street, Rego Park, Queens, New York (“the Property”). About a year later the Casses defaulted on the loan. In April 1990 appellee Key Bank National Association (“Key Bank”), to which the mortgage loan had been assigned, instituted foreclosure proceedings upon the Property in state court. The Casses thereupon embarked upon a series of filings under the Bankruptcy Code, whose sole and transparent purpose was to frustrate Key Bank’s foreclosure proceedings.
 
 [1]
 

 The Casses’ First Chapter 11 Filing
 

 On August 29, 1991 the Casses filed the first of three joint petitions for relief under Chapter 11 of the Bankruptcy Code, 11
 
 *330
 
 U.S.C. §§ 1101-1146 (1994), thereby obtaining the automatic stay of Key Bank’s state court foreclosure action provided by the Code, 11 U.S.C. § 362. The Casses never filed a reorganization plan or took any other meaningful action to advance that Chapter 11 proceeding. In July 1992 the bankruptcy court granted Key Bank a conditional lifting of the stay, setting a time table for the selling of the Property and requiring the Casses to commence making post-petition mortgage payments by August 1, 1992, failing which the stay would automatically terminate without further court order. The Casses failed to comply with those requirements. Upon Key Bank’s filing of a notice of non-compliance on July 8, 1993, the stay terminated. On July 29, 1993, the case was converted to a Chapter 7 liquidation case on the Casses’ motion. The Chapter 7 Trustee submitted a “no asset” report. The Cass-es were granted a discharge on January 6, 1995.
 

 The Casses’ Second Chapter 11 Filing
 

 In the interim Key Bank continued with its foreclosure action against the Property, eventually obtaining a judgment of foreclosure and sale from the state court. A foreclosure sale of the Property scheduled for April 18, 1996 was forestalled when, on April 17, the Casses filed their second Chapter 11 case and achieved another automatic stay. Once again, the Casses took no steps to advance the reorganization. They failed to file the monthly reports required of a debtor in possession; failed to pay the United States Trustee’s quarterly fees; failed to remain current on post-petition administrative expenses; failed to attend the meeting of creditors mandated by § 341 of the Code; and failed to file a plan of organization.
 

 In July 1996, the United States Trustee moved to dismiss the proceeding. The bankruptcy court granted that motion and dismissed the Casses’ second Chapter 11 case in an order dated September 24,1996.
 

 The Casses’ Third Chapter 11 Filing
 

 Following dismissal of the Casses’ second Chapter 11 case, Key Bank renewed its efforts to foreclose on the Property. Eventually the state court scheduled a foreclosure sale for April 17, 1997. True to form, on April 16, 1997 the Casses filed their third Chapter 11 case, thereby staying the foreclosure sale for the third time. The Casses showed no more interest in Chapter ll’s substantive remedies than previously. The United States Trustee moved to dismiss the Casses’ third Chapter 11 case within two weeks of its filing. After two adjournments procured by the Casses, that motion came on for hearing before the bankruptcy court on June 19, 1997.
 

 The June 19, 1997 Hearing Before the Bankruptcy Court
 

 The hearing on the Trustee’s motion to dismiss the Casses’ third Chapter 11 case took place before Bankruptcy Judge Feller on June 19, 1997. Alfred Dimino, Esq., appeared as counsel for the Trustee. Bertram Brown, Esq., appeared as counsel for the Casses. The hearing was brief. We reproduce below the transcript of the hearing in its entirety.
 

 CouRTROom Deputy: Number 21 on the calendar, Robert and Carol Casse. Adjourned motion to convert from Chapter 11 to 7 or a motion to dismiss by the U.S. Trustee’s Office.
 

 Mr. Dimino: Good morning, Your Honor. I conferenced this with debtor’s counsel. Given the history of this case and the status of their negotiations with the secured creditor, they are going to consent to the dismissal.
 

 The CouRt: Mr. Brown is a very very persistent advocate on the part of these people. He is what my Chapter 13 Trustee would call “a good customer.”
 

 Mr. BROWn: Judge, I am just a hired gun. I have spoken to Mr. Dimino. I am
 
 going
 
 back into the woodwork. I agreed to withdraw my opposition to his
 
 *331
 
 application. He is going to settle an order.
 

 The CouRt: That will be with prejudice. MR. BROwn: With prejudice on 21 days notice. Thank you, Judge.
 

 Mr. Dimino: Your Honor, I am looking for July 11th.
 

 The July 16, 1997 Order of the Bankruptcy Court
 

 On July 16, 1997 Bankruptcy Judge Feller signed an order which reads in its entirety as follows:
 

 ORDER DISMISSING THIS CHAPTER 11 CASE WITH PREJUDICE
 

 Whereas, the United States Trustee having made an application to this Court, dated April 23, 1997, pursuant to 11 U.S.C. § 1112(b), for conversion or dismissal of this case; and
 

 WheReas, a hearing having been held on June 19,1997; and
 

 WheReas, the debtors and their its [sic] attorney, Bertram Brown, Esq., having appeared and consented to the dismissal of this case; and
 

 Whereas, the United States Trustee, by Alfred M. Dimino, Esq., having appeared in support of a dismissal of this case; and
 

 WheReas, it appearing that appropriate notice having been given and sufficient cause existing for the relief requested, it is
 

 ORDERED, that pursuant to 11 U.S.C. § 1112(b), this case commenced under Chapter 11 of the Bankruptcy Code be, and hereby is, dismissed with prejudice.
 

 The Debtor-Appellant’s Chapter IS Filing
 

 Once more, Key Bank geared up for a foreclosure sale of the Property, which was set for September 19,1997.
 

 Debtor-appellant Robert E. Casse (hereinafter “Casse” or “the debtor”) responded by retaining a new attorney, George Pou-los, Esq., who on September 17 filed a Chapter 13 petition on behalf of the debt- or, in an effort to obtain yet another stay of the foreclosure sale of the Casses’ residence.
 

 Unlike the three preceding Chapter 11 filings, Casse’s wife Carol was not a party. Presumably that was because she had insufficient income of her own. As a commentator has noted, “Chapter 13 of the Bankruptcy Code provides a procedure for eligible individuals with regular income to pay their debts in full or to effect a composition. This chapter offers a qualifying individual an alternative to the liquidation case under Chapter 7 or the more formal reorganization case under Chapter 11.” 5 Norton,
 
 Bankruptcy Law and Practice 2d
 
 (1997) at 113:1 (footnotes omitted).
 

 This time the debtor did not obtain a stay of the foreclosure sale. Attorney Poulos says in an affidavit dated September 29, 1997 and filed with the bankruptcy court, App. 50-63, that he reviewed that court’s files, determined at least to his own satisfaction that Judge Feller’s July 16, 1997 order dismissing the Casses’ third Chapter 11 case “with prejudice” did not bar a subsequent Chapter 13 filing, accomplished that filing on September 17, and faxed a copy to Key Bank’s attorneys on September 18, stating that the foreclosure sale should be stayed.
 

 Not in the least deterred, on September 18 counsel for Key Bank replied to Poulos in a letter reading in part:
 

 I reviewed the Order Dismissing Case in Mr. Casse’s previous Chapter 11 case. I also consulted with Judge Feller’s law clerk concerning this matter. He reviewed the court dockets and advised me after talking to Judge Feller that the court interpreted the Order of Dismissal with Prejudice to mean that it precludes subsequent filings under any chapter of the Bankruptcy Code. Based on that' information, we are proceeding with the foreclosure sale at 10:30 a.m. on September 19,1997.
 

 
 *332
 
 And so counsel for Key Bank did, leading to the debtor’s motion to vacate the sale. The bankruptcy court denied that motion in an opinion and order, both dated April 21, 1998. The opinion is reported at 219 B.R. 657. The order, in addition to denying the debtor’s motion to vacate the foreclosure sale, also dismissed the Chapter 13 case “nunc pro tunc to September 17, 1997,” the date of filing, and reserved decision on the trustee’s motion to impose sanctions on the debtor and Mr. Poulos, his new attorney.
 

 The district court affirmed. This appeal followed.
 

 II.
 
 DISCUSSION
 

 A.
 
 Standard of Review
 

 In an appeal from a district court’s review of a bankruptcy court decision, we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law
 
 de novo. See In re AroChem Corp.,
 
 176 F.3d 610, 620 (2d Cir.1999).
 

 B.
 
 The Nature of the Casses’ Conduct
 

 The nature of the Casses’ conduct throughout this bankruptcy litigation lies at the heart of the case. It is a subject which Bankruptcy Judge Feller addressed in no uncertain terms. Two quite different perceptions of the Casses are conceptually possible. On this Chapter 13 appeal, Casse portrays himself as an honorable but unlucky debtor, deserving of the fresh start in life bestowed upon such citizens by the remedial provisions of the Bankruptcy Code.
 
 [2]
 
 Presumably Casse would confer that same state of grace upon Carol Casse, his partner in marriage and Chapter 11 filings.
 

 A different view of the Casses is suggested by Bankruptcy Judge Hardin’s decision in
 
 In re Felberman,
 
 196 B.R. 678, 681 (Bankr.S.D.N.Y.1995):
 

 The filing of a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code. Serial filings are a badge of bad faith, as are petitions filed to forestall creditors,
 

 (citations and internal quotation marks omitted). If the Casses fit this profile of serial filers, they are to be found not in the ranks of the nation’s honest debtors, but among the Hannibal Lecters of current bankruptcy litigation.
 

 Bankruptcy Judge Feller entertained no doubt that the Casses deserved that opprobrium. He wrote in his April 21, 1998 opinion:
 

 By the time of dismissal of the third Chapter 11 case, if not earlier, it became abundantly clear that the Debtors were impermissibly employing the Bankruptcy Code in repeated futile bankruptcy reorganization efforts solely to thwart Key Bank from exercising its legitimate contractual and state law foreclosure remedies.... Here, the fact that the Debtor’s numerous bankruptcy petitions were filed solely to delay a foreclosure sale of the Property, rather than forwarding any honest attempt to reorganize debt, is glaringly apparent.
 

 219 B.R. at 658, 661.
 

 Thus the bankruptcy judge found as a fact that the Casses acted in bad faith throughout this litigation. We have no reason to disturb that finding. Given the undisputed chronology of scheduled- Prop
 
 *333
 
 erty foreclosure sales and bankruptcy filings, viewed in the light of
 
 Felberman
 
 and similar’ authorities, the bankruptcy court’s finding of bad faith can hardly be characterized as clearly erroneous.
 

 C.
 
 The Intent and Effect of the Bankruptcy Court’s July 16, 1997 Order
 

 Casse’s appeal turns upon the intent and effect of the bankruptcy court’s July 16, 1997 order, quoted in its entirety
 
 supra
 
 (“the Order”). Two separate but related questions arise: (1) Did Bankruptcy Judge Feller intend by the Order to bar any subsequent filing by Casse under the Bankruptcy Code, including a filing under Chapter 13, or only further Chapter 11 filings? (2) If the bankruptcy judge intended by the Order to bar any subsequent filing, did such order lie within his powers under the statutory scheme?
 

 Casse argues on appeal that the Order does not express the bankruptcy court’s intent to bar Chapter 13 filings; and that in any event, such a bar would exceed the court’s powers under the Code.
 

 We consider these questions in turn.
 

 1.
 
 The Intent of the Order
 

 This question need not detain us long. The Order’s sole decretal paragraph provided that “pursuant to 11 U.S.C. § 1112(b), this case commenced under Chapter 11 of the Bankruptcy Code be, and hereby is, dismissed with prejudice.” The Order does not say with prejudice
 
 to what,
 
 although it could have done so,
 
 viz,
 
 “with prejudice to any further filings under the Bankruptcy Code,” or “with prejudice to any further filings under Chapter 11.” Accordingly “with prejudice” may be regarded as ambiguous, as at least one other circuit has found when the phrase is used in a bankruptcy court’s order.
 
 See Colonial Auto Ctr. v. Tomlin (In re Tomlin),
 
 105 F.3d 933, 940 (4th Cir.1997) (“[W]e believe the bankruptcy court’s order granting the trustee’s motion to dismiss ‘with prejudice,’ ‘[f]or the reasons set forth’ in that motion, is ambiguous.... Our remaining task is to determine the meaning of the ambiguous order at issue here.”).
 

 As
 
 Tomlin
 
 also holds, if a bankruptcy order of dismissal is ambiguous in this regard, the bankruptcy court’s interpretation of its own order “warrants customary appellate deference. The bankruptcy court was in the best position to interpret its own orders.” 105 F.3d at 941 (citations and internal quotation marks omitted). This brings us to Bankruptcy Judge Feller’s April 21, 1998 opinion and order, which remove any lingering doubt as to his intention when he dismissed the Casses’ third Chapter 11 petition “with prejudice.”
 
 [3]
 

 In its April 21, 1998 opinion, which denied Casse’s motion to vacate the sale, of the Property, the bankruptcy court specifically concluded that
 

 [t]he instant Chapter 13 case was filed in violation of the Order dismissing the Debtor’s third Chapter 11' case “with prejudice.” The Debtor was thus ineligible to file under any chapter of the Bankruptcy Code. Therefore, this Chapter 13 case is dismissed as a nullity.
 

 219 B.R. at 665.
 

 One cannot imagine a more clear declaration of the bankruptcy court’s intention than its July 16,1997 order barring all future filings by the debtor, including those invoking other chapters of the Code.
 
 [4]
 
 
 *334
 
 We agree with the Fourth Circuit in
 
 Tomlin,
 
 105 F.3d at 941, that an appellate court reviewing bankruptcy orders should “defer to a district court’s interpretation of its own order,” and extend the same deference to Bankruptcy Judge Feller’s interpretation of his order in the case at bar.
 

 2.
 
 The Effect of the Order
 

 Whether the bankruptcy court’s July 16, 1997 order dismissing the Casses’ third Chapter 11 case “with prejudice” could have its intended effect of barring filings under other chapters presents a question of law which we consider
 
 de novo.
 

 This case illustrates the serious problems that bad faith litigants can pose for the proper, timely and just administration of the Bankruptcy Code. “The challenge courts have faced is what forms of relief can be entered to bring to an end abusive practices by debtors, especially to deal with abuses caused by so-called serial filers.”
 
 Felberman,
 
 196 B.R. at 681. It is clear enough that the Casses were serial filers. Judge Feller concluded that their abusive practices could be ended, and the long-suffering Key Bank furnished foreclosure relief, by dismissing the then pending Chapter 11 case in such a way as to stop further abuse. That is the intended function of the phrase “with prejudice,” which the bankruptcy judge viewed as barring the debtor’s subsequent Chapter 13 filing. Judge Feller explained his reasoning in these words:
 

 The relevant portion of the Order reads “that pursuant to 11 U.S.C. § 1112(b), this case commenced under Chapter 11 of the Bankruptcy Code be, and hereby is, dismissed with prejudice.” Like other courts that have dismissed cases with prejudice, barring debtors from refiling so that creditors may complete foreelo-sure actions, this Court relied on § 105(a) and § 349(a) of the Bankruptcy Code, .... which is made applicable to Chapter 11 cases by § 103(a) of the Bankruptcy Code.
 

 219 B.R. at 661-62 (footnote omitted), 664.
 

 We must consider those other sections of the Bankruptcy Code which Judge Feller concludes govern the effect of his § 1112(b) order of dismissal. But we begin with § 1112(b).
 

 11 U.S.C. § 1112(b) forms a part of Chapter 11, whose object “is to permit a potentially viable debtor to restructure and emerge from bankruptcy protection.”
 
 Kings Terrace Nursing Home and Health Related Facility v. New York State Dep’t of Social Servs. (In re Kings Terrace Nursing Home and Health Related Facility),
 
 184 B.R. 200, 203 (S.D.N.Y.1995). Section 1112 is captioned “conversion or dismissal.” Section 1112(b) provides in pertinent part that “on request of a party in interest or the United States trustee” the bankruptcy court “may dismiss a case under this chapter ... for cause,” a concept the statute illustrates by a list of specified occurrences. As the Historical and Statutory Notes appearing after 11 U.S.C.A. § 1112 (West 1993) at 473-74 observe, “[t]his list is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.”
 

 11 U.S.C. § 105(a) provides:
 

 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude
 
 *335
 
 the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
 

 11 U.S.C. § 349(a) provides:
 

 Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a ease under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.
 

 Section 349(a) forms a part of Chapter 3 of the Bankruptcy Code. It is made applicable to Chapter 11 cases by 11 U.S.C. § 103(a), which provides:
 

 Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title.
 
 [5]
 

 11 U.S.C. § 109(g), referred to in § 349(a), provides:
 

 Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
 

 (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
 

 (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.
 

 The debtor at bar argues principally that § 1112(b) is the only provision in this statutory scheme applicable to his case, so that the bankruptcy court was not entitled to avail itself of §§ 105(a) and 349(a) in determining the effect of its order of dismissal. We disagree.
 

 First, the debtor contends that because the July 16, 1997 Order of dismissal referred only to § 1112(b) of the Code, and did not cite § 105(a) or § 349(a), the Order can only be read to apply to subsequent Chapter 11 petitions. There is no substance to this contention. Of course this Order dismissing a Chapter 11 case cited § 1112(b), the section of the Code providing for dismissal of Chapter 11 cases; one would hardly expect the bankruptcy judge to cite the comparable provisions for dismissing Chapter 7 or Chapter 13 cases. As we have previously observed, the distinctive and decisive aspect of the Order lies not in the dismissal of the Casses’ third Chapter 11 petition “for cause,” but in its dismissal of that case “with prejudice.” The bankruptcy court’s opinion made that clear: “The instant Chapter 13 case was filed in' violation of the Order dismissing the Debtor’s third Chapter 11 case “with prejudice.’” 219 B.R. at 665.
 

 The bankruptcy court’s inclusion of the phrase “with prejudice” necessarily implicated §§ 105(a) and 349(a) as possible sources of authority. The dismissal of a Chapter 11 case “for cause” does not
 
 ipso facto
 
 bar future filings; To bar future filings, an order of dismissal must be “with prejudice”; and bankruptcy courts look to §§ 105(a) and 349(a) for their authority to impose that sanction. The distinction between dismissals “for cause” and “with prejudice” is noted in
 
 In re Martin-Trigona,
 
 35 B.R. 596, 601 (Bankr.S.D.N.Y.1983): “Where there exists a multiplicity of factors which would be sufficient to meet the cause requirement of § 1307, the cumulative effect will be considered in determining whether there exists sufficient cause for a dismissal with prejudice pursuant to § 349(a).”
 
 [6]
 

 
 *336
 
 We will consider § 105(a) and § 849(a) in turn, beginning with § 105(a), because that is the first provision Bankruptcy Judge Feller specified as authority for his order.
 

 11 U.S.C. § 105 “is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction.... Bankruptcy courts, both through their inherent powers as courts, and through the general grant of power in section 105, are able to police their dockets and afford appropriate relief.” 2
 
 Collier on Bankruptcy
 
 (15th ed.1999) at 105-5 to -7 (footnote omitted). As one bankruptcy court has noted, the legislative history of § 105 reflects congressional intent that the section be “similar in effect to the All Writs Statute, 28 U.S.C. § 1651,” and was included in the Bankruptcy Code “to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute.”
 
 In re Earl,
 
 140 B.R. 728, 741 n. 4 (Bankr.N.D.Ind.1992) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 316-317 (1977)).
 
 Earl
 
 is one of the many bankruptcy cases holding that “§ 105 empowers this Court to enjoin future filings to prevent abuse of the bankruptcy process.”
 
 Id.
 
 at 741.
 

 Section 349(a) also empowers bankruptcy courts to enjoin future filings, although there is a conflict among the circuits as to the scope of that empowerment, and whether the provisions of § 349(a) contradict those of § 105. The distinctly minority view on these questions is that of the Tenth Circuit, which held in
 
 Frieouf v. United States (In re Frieouf),
 
 938 F.2d 1099, 1103 (10th Cir.1991), that while § 349(a) “gives bankruptcy courts discretion to determine whether there is ‘cause’ to dismiss a case with prejudice,” the section “does not deny a debtor all future access to bankruptcy court,
 
 except
 
 as
 
 provided in § 109(g),”
 
 which in turn contains a 180-day temporal limit. (Emphasis in original). The Tenth Circuit also concluded in
 
 Frieouf
 
 that its construction of § 349(a) precluded the application of § 105(a) to justify a longer prohibition against future filings. The bankruptcy court and the district court had relied upon § 105(a) in dismissing a Chapter 11 case “with prejudice to the filing of any bankruptcy petition by debtor for a period of three years,”
 
 id.
 
 at 1102; however, the Tenth Circuit stated:
 

 Such rebanee was misplaced. The broad equitable powers that bankruptcy courts have under section 105(a) may not be exercised in a manner that is inconsistent with the other, more specific provisions of the Code. Consequently, the bankruptcy court’s three-year prohibition against fifing a bankruptcy case, which plainly contradicts the 180-day limitation under section 109(g), cannot be sustained under section 105(a).
 

 Id.
 
 at 1103 n. 4 (citation and internal quotation marks omitted).
 

 While lower courts in the Tenth Circuit have perforce followed
 
 Frieouf
 
 with a reluctant obedience,
 
 [7]
 
 no other circuit has adopted its reading of the Bankruptcy
 
 *337
 
 Code, and the Fourth Circuit rejects it, and so do all the lower courts which sit outside the Tenth Circuit.
 

 In
 
 In re Tomlin,
 
 105 F.3d 933, the Fourth Circuit considered whether a bankruptcy court intended by its order dismissing a case “with prejudice” to do no more than limit subsequent filings to the 180 days proscribed by § 109(g); or, instead, to imbue that order with the
 
 res judicata
 
 effect of precluding the subsequent discharge of debts existing at the filing of the dismissed case (as a creditor contended). The order was ambiguous, the Fourth Circuit noted, because it “contains no specific reference to the § 109(g) bar to filing successive petitions. Nor does it state the period of time that it would be in effect,
 
 e.g.,
 
 the 180-day period provided in § 109(g)
 
 or a longer period.”
 
 105 F.3d at 939 (emphasis added) (citation omitted).
 

 After analyzing the full record in the bankruptcy court, including that court’s subsequent opinion clarifying the order at issue, the Fourth Circuit concluded that the court intended by its order tb do no more than impose § 109(g)’s 180-day prohibition against further filings. But the larger analytical significance of
 
 Tomlin
 
 lies in the fact that if the Fourth Circuit had agreed with
 
 Frieoufs
 
 holding that a § 349(a) order of dismissal with prejudice
 
 could not
 
 validly bar filings for more than 180 days, there
 
 could not
 
 have been a meaningful ambiguity in the- bankruptcy court’s opinion for the court of appeals to resolve, since only one interpretation would have been permissible.
 

 The Fourth Circuit’s analysis of the statutory scheme makes manifest its view that the Code permits longer prohibitions against future filings than does § 109(g). The
 
 Tomlin
 
 court pointed out that § 109(g) “was added to the Bankruptcy Code in 1984 to address the precise abuse of the bankruptcy system at issue here— the filing of meritless petitions in rapid succession to improperly obtain the benefit of the Bankruptcy Code’s automatic stay provisions as a means of avoiding foreclosure under a mortgage or other security interest.” 105 F.3d at 937. And, the
 
 Tomlin
 
 court goes on to observe, “[i]n addition to the adoption of § 109(g), codifying the court’s power to temporarily bar refiling, the 1984 amendments also revised the language of § 349,” adding the language that appears after the semi-colon in the present text of § 349(a), namely, “nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.”
 
 Id.
 
 at 938.
 

 While, as the Fourth Circuit continued in
 
 Tomlin,
 
 some commentators suggested that “the language of 349(a) limits the prejudicial impact of a dismissal to that provided in new § 109(g),”
 
 id.
 
 (citations and internal brackets omitted), and indeed this - is what the Tenth Circuit held in
 
 Frieouf,
 
 . the Fourth Circuit would have none of that restrictive interpretation:
 

 Our analysis of the plain language and statutory scheme of the statute leads us to conclude that § 349 was never intended to limit the bankruptcy court’s ability to impose a permanent bar to discharge that would have res judicata effect. Rather, the language of § 349, as amended, seems to make clear that the court has the power to order such a sanction in circumstances other than those dealt with by new § 109(g).
 

 Tomlin,
 
 105 F.3d at 938 (citations and internal quotation marks omitted). Subsequent lower court decisions in the Fourth Circuit read
 
 Tomlin
 
 to permit prohibition of future bankruptcy filings for a longer period than the 180 days specified in § 109(g).
 
 See, e.g., In re Weaver,
 
 222 B.R. 521 (Bankr.E.D.Va.1998), quoted
 
 infra.
 

 Indeed, in all circuits but the Tenth, bankruptcy courts and district courts invariably derive from § 105(a) or § 349(a) of the Code, or from both sections in some cases, the power to sanction bad-faith serial filers such as the Casses by prohibiting further bankruptcy filings for longer peri
 
 *338
 
 ods of time than the 180 days specified by § 109(g). The following cases are illustrative:
 
 In re Weaver,
 
 222 B.R. at 522, 523 and n. 1 (dismissal of Chapter 7 case with prejudice and precluding debtor from filing another bankruptcy case for a period of 12 months; “Our court of appeals has recognized that the underscored language in § 349(a) gives a bankruptcy judge discretion to ‘order otherwise’ for cause and to dismiss a petition with prejudice.... The bankruptcy court’s discretion under § 349(a) to bar a debtor’s bankruptcy filing within a set time is not limited to the 180 day period of Code § 109(g)” (citing
 
 Tomlin)); In re Robertson,
 
 206 B.R. at 830-31 (“this Circuit has already dealt with the issue of whether a debtor can be enjoined from filing a bankruptcy petition beyond 180 days.... It is ultimately up to the court’s discretion to decide if the length of time requested by the movant is appropriate.... We believe there is strong evidence of bad faith on the part of the [Chapter 13] debtor and find this behavior deserving of a dismissal with prejudice under § 1307(c), § 105(a), § 109(g) and § 349(a). Based on the debtor’s conduct, a dismissal with prejudice ... for a period of 417 days, the actual time that he has unreasonably delayed the IRS and his other creditors, is warranted.”) (expressly declining to follow
 
 Frieouf); Norwalk v. Sav. Soc’y v. Peia (In re Peia),
 
 204 B.R. 310, 311, 315 (Bankr.D.Conn.1996) (granting creditor’s “Emergency Motion under 11 U.S.C. § 105(a),” concluding that serial Chapter 13 filing was not bona fide, and directing that “any further petitions filed by Peia under any chapter of the bankruptcy code in any bankruptcy court in the United States of America shall not affect or interfere with” creditor’s eviction action);
 
 In re Robinson,
 
 198 B.R. 1017, 1022-23 (Bankr.N.D.Ga.1996) (“The usual remedy for a bad faith filing is a dismissal pursuant to § 109(g), which works to prohibit the filing by a debtor of any case under Title 11 for a period of 180 days....
 
 Further authority for such a dismissal arises under § 105(a),
 
 which empowers this court to issue any order, process or judgment which is necessary or appropriate to prevent abuse of the bankruptcy system.”) (emphasis added);
 
 In re Herrera,
 
 194 B.R. 178, 189-90 (Bankr.N.D.Ill.1996) (“[T]he Court hereby dismisses the instant serial Chapter 13 case under § 109(g)(1).... In addition, pursuant to 11 U.S.C. § 349(a), the Court has the discretion to dismiss the case with prejudice .... Hence, the instant case is dismissed with prejudice and the Debtors are prohibited from filing another bankruptcy case in any chapter for a period of one year from the date this Opinion and Order are docketed.”);
 
 Mother African Union Methodist Church v. Conference of Aufcmp Church (In re The Conference of African Union First Colored Methodist Protestant Church),
 
 184 B.R. 207, 223 (Bankr.D.Del.1995) (1986 amendment to § 105(a) made it plain that “the fact that section 1112(b) requires a party or trustee to request dismissal or conversion does not preclude bankruptcy courts from evaluating a Chapter 11 petition and, on its own initiative, dismissing or converting that petition for cause.... For purposes of exercising the power authorized by Code § 105(a), it makes no difference whether it is a Chapter 11 case or a Chapter 7 case”; serial Chapter 7 case dismissed under § 105(a));
 
 In re Gros,
 
 173 B.R. 774, 777 (Bankr.M.D.Fla.1994) (as “the debtor’s multiple bankruptcy filings, coupled with involuntary dismissals [was] cause to dismiss this case with prejudice,” the court barred the debtor from filing another petition for two years without court permission);
 
 Stathatos v. United States Trustee (In re Stathatos),
 
 163 B.R. 83, 87-88 (N.D.Tex.1993) (where debtors’ successive Chapter 13 cases “were obviously filed to hinder eviction proceedings,” district court affirmed bankruptcy court’s order dismissing latest case with prejudice to filing a further Chapter 13 petition for two years; district court stated: “Pursuant to 11 U.S.C. § 1307(c), a bankruptcy court may dismiss a Chapter 13 case for cause....
 
 *339
 
 Moreover, the bankruptcy court has discretion to dismiss with prejudice to the refiling of a subsequent Chapter 13 case. 11 U.S.C. § 349(a).... The bankruptcy court acted within its discretion to enjoin further filings to prevent abuse of the bankruptcy process. 11 U.S.C. § 105(a).”) (citations omitted);
 
 Jolly v. Great Western Bank (In re Jolly),
 
 143 B.R. 383, 385-87 (E.D.Va.1992) (on proper reading of § 349(a), “a debtor may be prejudiced from filing subsequent bankruptcy petitions under two circumstances: (1) if the court, for cause, so orders, or (2) if the terms of § 109(g) apply to the debtors’ case. Thus, this court finds that, so long as the dismissing court finds cause, a bankruptcy action may be dismissed with prejudice for 180 days,
 
 or more,
 
 without violating the terms of § 349(a) or, for that matter, § 109(g).”) (emphasis added) (citing supporting cases and declining to follow
 
 Frieouf
 
 principle),
 
 aff'd without published opinion,
 
 45 F.3d 426 (4th Cir.1994);
 
 In re Earl,
 
 140 B.R. at 741 (invoking § 105 to bar serial Chapter 13 filer from further petition “under any chapter of the Bankruptcy Code” for a stated period; “even assuming
 
 arguendo,
 
 (without so concluding), that the
 
 Frieouf
 
 Court is correct and that § 349(a) does not permit a dismissal that prohibits the filing of a new case, except as expressly provided in § 109(g), the Court nevertheless concludes that § 105 empowers this Court to enjoin future filings to prevent abuse of the bankruptcy process.”);
 
 In re Dilley,
 
 125 B.R. 189, 197-98 (Bankr.N.D.Ohio 1991) (serial filer prohibited from filing any case under Chapter 11 or Chapter 13 for twelve months; court reasoned that “unless” clause in § 349(a) empowered bankruptcy court to prohibit filings for cause without regard to temporal limitations found in § 109(g); alternatively, “even if the Debt- or’s efforts to extend his fourteen month enjoyment of bankruptcy protections free of Court control without evidence of feasibility or good faith were immune from constraint under section 349(a), it appears that the Court has authority under section 105 of the Bankruptcy Code to impose appropriate restraints..... The fact that the Code expressly provides refiling prohibitions in section 109(g) also lends support to the Court’s fashioning similar prohibitions under sections 349(a) or 105(a) where appropriate.”);
 
 Lerch,
 
 94 B.R. at 1001 (affirming bankruptcy court’s order dismissing with prejudice serial filer’s Chapter 12 case and barring further filings for two years; “Section 349(a) is not modified or limited by Section 109(g) so long as the bankruptcy court ‘for cause, rules otherwise’ and the bankruptcy court’s dismissal of the case with prejudice for the two-year period falls under the ‘for cause’ exception of Section 349(a).”).
 
 [8]
 

 This circuit does not appear to have considered previously the Bankruptcy Code’s statutory scheme for dealing with serial filers and their bad faith abuse of the bankruptcy process. We take this opportunity to ally ourselves with the Fourth Circuit and the great majority of lower courts which derive from §§ 105(a) and 349(a) of the Code a bankruptcy court’s power, in an appropriate case, to prohibit a serial filer from filing petitions for periods of time exceeding 180 days. We join those courts in concluding that § 109(g) does not impose a temporal limitation upon those other sections.
 

 On the issue of statutory construction, we find persuasive the district courts’ analyses in
 
 Jolly,
 
 143 B.R. 383, and
 
 Lerch,
 
 94 B.R. 998. In
 
 Jolly,
 
 a decision presaging the Fourth Circuit’s conclusions in
 
 Tomlin,
 
 the Eastern District of Virginia construed § 349(a) and reasoned at 143 B.R. at 387:
 

 If, according to Debtors, the qualifying phrase, “Unless the court, for cause, orders otherwise,” does not modify the clause following the semi-colon, then the
 
 *340
 
 only way a debtor may be prejudiced regarding the filing of a subsequent petition is pursuant to the terms of § 109(g) (formerly § 109(f)), whose terms, Debtors argue, do not apply to their case.
 

 This court, however, finds that the qualifying phrase in § 349(a) applies both to the clause preceding the semi-colon and the clause following the semi-colon. The semi-colon does not create two completely separate clauses. Indeed, use of the word “nor” implies conjunction between the two clauses. Furthermore, Congress used the same syntax in constructing both clauses, and both clearly refer to the same dismissal. One clause simply states that the dismissal does not usually bar a later discharge of debts; the other states that the dismissal does not prejudice a debtor with respect to later filings. The semi-colon, as it is used in this statutory provision, is merely a means of punctuating a long sentence. This reading of § 349(a) means that a debtor may be prejudiced from filing subsequent bankruptcy petitions under two circumstances: (1) if the court, for cause, so orders, or (2) if the terms of § 109(g) apply to debtors’ case. Thus, this court finds that, so long as the dismissing court finds cause, a bankruptcy action may be dismissed with prejudice for 180 days, or more, without violating the terms of § 349(a) or, for that matter, § 109(g).
 

 (footnotes omitted). In
 
 Lerch,
 
 the Northern District of Illinois said at 94 B.R. at 1001:
 

 Section 349(a) of the Code does not allow the bankruptcy court to bar discharging in a later case debts that were dischargeable in the dismissed action, and does not allow for dismissal with prejudice except as provided under Section 109(g) “unless the court for cause, orders otherwise.... ” 11 U.S.C. § 349(a) (Supp. Ill 1985) (emphasis added). The clear meaning of this statutory reference under the Code is that unless the court “for cause, orders otherwise,” the court may not dismiss a case with prejudice for a period beyond the explicit 180-day limitation found in Section 109(g). In this case, however, that court appears to have based its dismissal with prejudice on a finding of cause. When the court has found cause for a dismissal with prejudice, the mandate of Section 109(g) is not applicable — at least to the extent that it merely provides a minimum amount of time before a case may be refiled, not a maximum period of time for which the bankruptcy court may dismiss a case with prejudice when there is a dismissal for cause.
 

 Therefore, based on the foregoing, this Court holds that Section 349(a) is not modified or limited by Section 109(g) so long as the bankruptcy court “for cause, rules otherwise” and the bankruptcy court’s dismissal of the case with prejudice for the two-year period falls under the “for cause” exception of Section 349(a).
 

 We find these constructions preferable to that of the Tenth Circuit in
 
 Frieouf,
 
 which derives from § 349(a)’s reference to § 109(g) the temporal limitation of 180 days upon the bankruptcy courts’ equitable power to preclude future filings for cause under §§ 105(a) and 349(a). When one considers that Congress intended § 109(g) to give bankruptcy courts an additional weapon for use against serial filers, it is perverse to construe the section as striking from the courts’ hands other sections of the Code which may remedy the same problem. Of course, we agree with the principle articulated in
 
 Frieouf
 
 that a statute’s general provisions may be eclipsed by a provision specifically addressing a particular issue, and have applied that principle in bankruptcy;
 
 see Guerin v. Weil, Gotshal & Manges,
 
 205 F.2d 302, 304 (2d Cir.1953) (reversing allowance to petitioning creditors for certain fees because the Bankruptcy Act did not authorize their payment; “[although it has been broadly stated that a bankruptcy court is a court of
 
 *341
 
 equity, the exercise of its equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act.” (citation omitted)). However, in company with most courts that have considered the question, we find nothing in § 109(g) of the present Bankruptcy Code that prescribes limits upon the bankruptcy courts’ power to dismiss bad faith filings “for cause” under § 349(a), or their power to protect against abuses of the bankruptcy process by resort to § 105(a), the Code’s counterpart to the All Writ Statute. On the contrary: these several provisions complement each other in arming the bankruptcy courts with a variety of weapons for use in controlling serial filers, a species not likely to become endangered in the foreseeable future.
 

 Accordingly we hold that the intended effect of Bankruptcy Judge Feller’s order of dismissal with prejudice, namely, to preclude future filings by the debtor, was authorized by the Code provisions upon which the judge subsequently said he relied.
 

 While the bankruptcy court’s July 16, 1997 order did not specify the Code sections upon which it was based, or the scope and duration of the bar on future filings implicit in the phrase “with prejudice,” these omissions avail the debtor nothing. Their only effect was to make the order ambiguous; and the ambiguities were resolved by the bankruptcy court’s April 21, 1998 opinion, to which we may refer, as did the Fourth Circuit in
 
 Tomlin’s
 
 comparable circumstances.
 

 Neither the debtor nor his counsel asked the bankruptcy court for clarification of the July 16, 1997 order’s effect, either when the order was issued or before filing the Chapter 13 petition. A bankruptcy practitioner might have considered at least the possibility that the order of dismissal “with prejudice” implicated one or both of §§ 105(a) and 349(a). Had the court’s clarification been sought at those earlier times, Bankruptcy Judge Feller undoubtedly would have responded in the same terms he used subsequently in his April 21, 1998 opinion. Of course, such a prudent inquiry would have been against the na- ' ture of a serial filer determined to hold off a foreclosure; but the debtor’s failure to inquire serves to mute the tones of outrage in which the present appeal is cast.
 
 [9]
 

 D.
 
 Conclusion
 

 Reviewing courts will affirm a bankruptcy court’s order barring subsequent filings by a particular debtor if they can discern “neither legal nor factual error, nor abuse of discretion, in the bankruptcy court’s ruling,”
 
 Jolly,
 
 143 B.R. at 388. Since in such eases “the bankruptcy court was able to view firsthand the actions and statements of the parties, [and] was able to view the conduct of those parties over an extended period of time,” the reviewing court “will not substitute its judgment for that of the bankruptcy court,” in the absence of a finding of abuse of discretion.
 
 Lerch,
 
 94 B.R. at 1002.
 

 In the case at bar, we decline, as previously stated, to disturb the bankruptcy court’s finding of fact that the Casses’ serial filings were made in bad faith. Nor, under the statutory scheme, did the bankruptcy court’s order constitute legal error. The remaining question is whether either of the bankruptcy court’s two orders, the first barring the debtor’s most recent filing under Chapter 13, and the second denying the debtor’s motion to vacate Key Bank’s foreclosure sale, constituted an abuse of
 
 *342
 
 the court’s discretion. Given the Casses manifest and abusive bad faith and the court’s just purpose in allowing Key Bank to proceed with its long-delayed foreclosure remedy, we find no abuse of discretion.
 

 Finally, the bankruptcy court’s treatment of the debtor’s Chapter 13 filing, as void
 
 ab initio
 
 is consistent with established authority.
 
 See, e.g., Rowe v. Ocwen Federal Bank & Trust (In re Rowe),
 
 220 B.R. 591, 595 (E.D.Tex.1997),
 
 aff'd without published opinion,
 
 178 F.3d 1290 (5th Cir.1999):
 

 The bankruptcy court [ ] also stands on solid footing in refusing to void the foreclosure sale of Rowe’s house. After finding that Rowe’s petition was filed in • bad faith, the bankruptcy court used its authority under 11 U.S.C. § 362(d) to lift the automatic stay
 
 ab initio.
 
 By doing so, the court validated the foreclosure sale of Rowe’s house. The court’s obvious rationale in lifting the stay
 
 ab initio
 
 was, because Rowe’s Chapter 13 petition was filed in bad faith and in violation of the 180-day ban, the petition was a nullity and consequently, the automatic stay never actually came into effect.
 

 We agree with that analysis, which is not affected by the fact that the bankruptcy court’s order in the case at bar was based upon sections of the Code other than § 109(g) and its 180-day ban.
 

 We have considered the debtor-appellant’s other arguments and find them to be without merit.
 

 The judgment of the district court, which affirmed the order of the bankruptcy court denying debtor-appellant’s motion to set aside the foreclosure sale of the Property, is affirmed.
 

 It is So Ordered.
 

 [1]
 

 . The narrative set forth in text is derived principally from Bankruptcy Judge Feller's description of the "Factual Context” of the case appearing in his April 21, 1998 opinion.
 
 See
 
 Appellant's Appendix at 9-18. The facts recited therein are undisputed.
 

 [2]
 

 . Thus Casse’s main brief at 13 n. 7 cites and quotes
 
 Grogan v. Garner,
 
 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), for the proposition that "the Bankruptcy Code's central purpose is remedial,” enabling insolvent debtors to enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt” (citation and internal quotation marks omitted). However, Casse's brief omits the next sentence in
 
 Grogan:
 
 "But in the same breath that we have invoked this fresh start policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor.”
 
 Id.
 
 at 286-87, 111 S.Ct. 654 (citation and internal quotation marks omitted).
 

 [3]
 

 . It is of no moment that Judge Feller’s dismissal order antedated his opinion interpreting that order. No occasion for a judicial interpretation arose until Casse moved to vacate the forfeiture sale of the Property. In
 
 Tomlin,
 
 the Fourth Circuit looked for guidance to “the 1995 memorandum opinion of the bankruptcy court interpreting its 1993 dismissal 'with prejudice,' " 105 F.3d at 941. What is material is the bankruptcy court's interpretation of its own order, not the sequence of that court's several written orders and opinions.
 

 [4]
 

 . We note that, although the bankruptcy court's order did not provide a time after which the debtor could once again file a bankruptcy petition,
 
 cf. In re Robertson,
 
 206
 
 *334
 
 B.R. 826, 830-31 (Bankr.E.D.Va.1996) (barring future filings for 417 days);
 
 Lerch v. Federal Land Bank of St. Louis (In re Lerch)
 
 , 94 B.R. 998, 1001 (N.D.Ill.1989) (barring further filings for two years), it is clear from the bankruptcy court's decision on April 21, 1998 that it only intended to bar temporarily the debtor from filing another petition before Key Bank had an opportunity to foreclose on the Property.
 
 See
 
 219 B.R. at 664. We therefore need not reach the question of whether a bankruptcy court could permanently preclude a serial filer from filing bankruptcy petitions.
 

 [5]
 

 . Section 1161, referred to in § 103(a), is not pertinent to the case at bar. It provides that certain sections of the Bankruptcy Code "do not apply in a case concerning a railroad.”
 

 [6]
 

 . 11 U.S.C. § 1307 governs the conversion or dismissal of Chapter 13 cases. It is the counterpart to § 1112(b) in Chapter 11 cases.
 

 [7]
 

 .
 
 See, e.g., In re Cooper,
 
 153 B.R. 898, 900 (D.Colo.1993). The district judge described himself as bound by
 
 Frieouf
 
 s reading of § 349(a) and § 109(g) that a bankruptcy court, dismissing a case for cause, " 'may not deny future access to [the] bankruptcy court, except under the circumstances of section 109(g),’ " but had the temerity to add: “This is not to say, however, that the circuit’s decision is free from all doubt or has been widely championed as a wise and just decision,” compared
 
 Frieouf
 
 to
 
 "In re Jolly,
 
 143 B.R. 383 (E.D.Va.1992) (As long as bankruptcy court finds 'cause’ under § 349, it may dismiss a petition with prejudice for more that 180 days), and
 
 In re Earl,
 
 140 B.R. 728 (Bankr.N.D.Ind.1992) (specifically finding that § 105 provides a bankruptcy court with equitable powers similar to those found in the All Writs Statute),” and concluded with discernible regret: "Like the bankruptcy court, I am equally bound by [the circuit court’s] controlling precedent.”
 

 [8]
 

 .
 
 Jolly, Gros,
 
 and
 
 Lerch
 
 were cited by the Fourth Circuit with approval in
 
 Tomlin,
 
 105 F.3d at 939.
 

 [9]
 

 . At the hearing resulting in the July 16, 1997 order, the Casses were represented by Bertram Brown, Esq. Mr. Brown made no effort to resist an order of dismissal "with prejudice,” an omission clearly justified by the chronology of the case. We will never know whether Mr. Brown would have felt himself at liberty to file a subsequent Chapter 13 petition for the debtor, since the Casses replaced him with George Poulos, Esq., who filed the Chapter 13 case after reviewing the file but without seeking clarification from the court. The bankruptcy court reserved decision on the trustee’s motion to sanction the debtor and Mr. Poulos for that filing, a question not before us on this appeal.